UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YURY MOSHA,

       Plaintiff,

  – against –

YANDEX INC.,

       Defendant.

**OPINION AND ORDER**
18 Civ. 5444 (ER)

Ramos, D.J.:

  Yury Mosha ("Plaintiff" or "Mosha") initially brought this action in the Supreme Court of New York, County of New York against U.S.-based advertising company Yandex, Inc. ("Defendant" or "Yandex, Inc.") because its Russian sister corporation, Yandex, LLC ("Yandex, LLC") refused to remove websites from its search engine, Yandex.ru ("Yandex.ru"), that allegedly contained defamatory information about Mosha. Yandex, Inc. removed the case and asked the Court to dismiss the action on several grounds: comity; collateral preclusion; immunity granted by Communications Decency Act ("CDA"), 47 U.S.C. § 230; sufficiency of the pleadings; and in the alternative, *forum non conveniens* and failure to join a required party. For the reasons set forth below, the motion to dismiss is GRANTED.

**I. BACKGROUND**

  Mosha is a citizen of New York and the founder and chief executive officer of Russian America, Inc. ("Russian America"), a New York corporation. Doc. 1 ¶1; Doc. 31, 4. Mosha advertises his business heavily on the Internet and on various social media platforms. Doc. 31, 4. Most of his clientele is located in the Russian Federation, Ukraine, and other countries with

Russian-speaking diasporas, as his business provides consulting services for Russian-speaking U.S. visitors. *Id.* at 4–5.

Yandex, Inc. is a Delaware corporation with its principal place of business in Massachusetts, which helps American companies promote their products and services. Doc. 1 ¶ 1; Doc. 31, 15–16. Yandex, N.V., a Russian multinational corporation specialized in Internet-related products and services incorporated in the Netherlands, is the parent company for Yandex, Inc. and Yandex, LLC. Doc. 30, 7 n.2. Yandex, LLC is a major operator of an Internet portal headquartered in the Russian Federation. Doc. 28 ¶ 2; Doc. 33, Ex. O (article reporting that in 2017, Yandex, LLC commanded approximately 54% of online searches in Russia). Yandex, LLC owns and runs Yandex.ru. Doc. 28 ¶ 2. Thus, entering search terms on Yandex.ru generates links to websites, which Yandex, LLC indexes. Indexing refers to various methods that search engines use to make the contents of a website searchable and provide it with uniform source locators ("URLs" or "hyperlinks"). Doc. 31, 4.

Mosha believes he is the target of Russian hackers and business competitors that want to disparage him and destroy his business. Doc. 1, Ex. A at 9. Internet trolls and hackers have posted defamatory statements about Mosha, often anonymously or under fake names. *Id.* at 10. When Mosha asked the uploaders to remove their false allegations, they blackmailed him and promised to continue posting defamatory allegations about him when he refused to pay. *Id.* As a result, entering Mosha's name in the Russian language on Yandex.ru generates defamatory links about him. *Id.* Some of the messages mentioned Mosha's Jewish nationality and religion and incited people to pursue Mosha and kill him and other Jewish people: "Mosha is a cursed Jew, therefore it is in his blood to cheat and clean out people. All Jews are scammers, including Mosha. This Mosha and all his cursed Jewish tribe should be killed. Otherwise they will

2

plunder us all." *Id.* at 11. Additionally, the defamatory posts accused Mosha of being a "criminal" and a "felon," which he claims is hurting his business. Doc. 31, 5.

In 2017, Mosha sued Yandex, LLC in Russia because the company refused to de-index the allegedly defamatory websites. Doc. 33, Ex. S. Russia has a statute dubbed the "Right to be Forgotten" law, Article 152 of the Civil Procedure Code of the Russian Federation ("CPC"), which allows an individual to request that search engine operators, like Google or Yandex, LLC, remove links that are incorrect or outdated. Doc. 42, Ex. 1-B. Under Article 152 of the CPC, Russian citizens have the right to file a lawsuit to refute information defaming their honor, dignity, or business reputation. *Id.* Furthermore, pursuant to Article 10.3 of Russian Federal Law No. 149-FZ "On Information, Information Technologies and Information Protection" ("Article 10.3"), a citizen may ask the operator of a search engine that distributes advertisement targeted at customers in the Russian Federation, to stop issuing information about the indexed website. Doc. 42, Ex. 2-B. However, search engine operators do not have to remove links because of Article 10.3 for (1) information that contains features of criminal actions that are punishable by law and for which the terms of limitation for imposing criminal liability have not expired, or (2) information on a citizen committing a crime for which the record of conviction has not been expunged or which has not expired. *Id.*

Yandex, LLC has been ordered to comply with the "Right to be Forgotten" law in the past, for example in August 2017, a St. Petersburg court ordered it to remove search results about a businessman. Doc. 33, Ex. R at 8. In another instance, a court ordered it to remove links with information that allegedly defamed the dignity and business reputation of a former minister of agriculture. *Id.* Mosha relied on the "Right to be Forgotten" statute to sue Yandex, LLC in the Khamovniki District Court of Moscow (the "Khamovniki Court"), where it is headquartered.

3

Doc. 32 ¶ 22. The search terms which allegedly led to defamatory links at various Internet addresses included: "Yury Mosha–Exposing a Fraudster," "Yury Mosha the Swindler," "Yury Mosha the Rogue," "Yury Mosha the Scammer," and "Yury Mosha Deceived." *Id.* at Ex. L. Mosha asserted that the information posted on these websites was inaccurate as he did not commit fraudulent acts, steal money, or deceive his clients. *Id.*

On November 13, 2017, the Khamovniki Court decided the case against Mosha. Doc. 32, Ex. L. Mosha's complaint to the Khamovniki Court shows that he was represented by a lawyer named Viktor Viktorovich Kamaldinov ("Kamaldinov"), a member of the Moscow Bar Association. Doc. 33, Ex. S. However, neither Mosha nor his lawyer appeared for the court session in front of the Khamovniki Court, despite having been notified of the time and place of the hearing. Doc. 28, Ex. 7-B. Yandex, LLC sent representatives who asked the court to dismiss the case, arguing that the claims were groundless. Doc. 32, Ex. L at 2. The Khamovniki Court moved forward with the case despite Mosha's unexplained absence, finding that it was his will to refuse to exercise his right to a trial. *Id.*

The Khamovniki Court held that Yandex, LLC's refusal to de-index the websites was lawful and justified for numerous reasons: (1) Mosha presented no evidence, and the record did not reflect, that the sites distributed the information in violation of Article 10.3; (2) the Yandex search system on Yandex.ru automatically indexes publicly available information on the Internet and does not distribute the information, so it is not liable for third-party content; (3) Russia's constitution guarantees the right to freely share information; and (4) per Article 10.3, the websites contained information about activities with criminal features (i.e. Articles 158 (robbery) and 159 (swindling) of the Russian Federation Criminal Code) and the time limit for imposing

criminal liability for those actions had not yet expired. *Id.* at 3–4. Accordingly, the Khamovniki Court dismissed the claim against Yandex, LLC and granted Mosha leave to appeal. *Id.* at 4.

On June 4, 2018, a judicial panel for civil matters in Moscow (the "Russian Appellate Court") upheld the Khamovniki Court's decision. Doc. 28, 7-B. Mosha was represented by a new attorney, Yu. V. Bokhin, who sought to reverse the Khamovniki Court decision because Mosha had not defrauded his clients and on procedural grounds because he was not physically present at the hearing and was allegedly not notified of the hearing in a timely manner. *Id.* at 1. The Russian Appellate Court took into consideration that during the Khamovniki Court action, Mosha was represented by counsel who was duly notified of the date and time of the court hearing. *Id.* at 3. Article 167 of the CPC requires that parties notify the court of reasons for failure to appear and provide proof that such reasons were valid. *Id.* at 4. However, neither Mosha nor Kamaldinov provided such reasons or proof or made a motion to adjourn the case. *Id.* Thus, the Khamovniki Court properly moved forward with the case despite Mosha's absence. *Id.*

On June 16, 2018, after learning that Yandex, Inc. is the U.S.-based branch of Yandex, N.V.,[1] Mosha brought suit in New York State court and Yandex, Inc. later removed the action to this Court. Doc. 1; Doc. 31, 9. In his complaint, Mosha also alleges that Yandex, Inc. violated the user agreements for Yandex, LLC and Yandex.com ("Yandex.com"), a search engine registered to Yandex Europe A.G., another Yandex, N.V. subsidiary, which prohibit users from distributing harmful, illegal, slanderous, etc. information. Doc. 1 ¶ 14. Mosha claims he has no adequate remedy at law and seeks injunctive relief against Yandex, Inc., so they will remove the

---

[1] Mosha erroneously asserts that Yandex, Inc. is the U.S.-based branch of Yandex, LLC, but in fact the two companies are sister entities owned by the same parent corporation, Yandex, N.V. Doc. 28 ¶ 2; Doc. 31, 15.

5

search results that defame and humiliate him, as well as, compensatory and punitive damages in the amount of $100,000. Doc. 1, Ex. A ¶ 20.

## II. DISCUSSION

### A. International Comity's *Res Judicata* Effect on Foreign Judgments

Yandex, Inc. argues that the issues litigated in the Khamovniki Court action are identical to the ones being litigated here and thus this action is precluded by the doctrine of international comity abstention. Doc. 30, 7. "It is well established that United States courts are not obliged to recognize judgments rendered by a foreign country[] but may choose to give *res judicata* effect to foreign judgments on the basis of comity." *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 663 (S.D.N.Y. 1996), *aff'd*, 122 F.3d 1055 (2d Cir. 1997).

#### 1. International Comity

The seminal case on enforcing foreign judgments, *Hilton v. Guyot*, defines international comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation…." 159 U.S. 113, 164 (1895). If the foreign forum provided the plaintiff with a full and fair trial before a court of competent jurisdiction, under a system likely to secure an impartial administration of justice, then the foreign action should not be tried afresh. *Id.* at 202–03. There is one widely recognized exception to honoring comity and that is in cases where enforcing the foreign judgment would prejudice or undermine domestic interests. *See Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 446 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003); *see also Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F. Supp. 2d 369, 373 (S.D.N.Y. 2004) (holding courts generally extend comity when it does not prejudice rights of United States citizens or violate domestic policy).

Whether to dismiss a case on international comity grounds lies within the discretion of the district court. *See Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999). The application of comity varies depending on whether a party seeks recognition of a foreign judgment that has become final or of a pending parallel proceeding that has yet to reach a final judgment. *Klonis v. Nat'l Bank of Greece, S.A.*, 487 F. Supp. 2d 351, 355 (S.D.N.Y. 2006). If the foreign judgment is still pending, then the Second Circuit has instructed district courts to determine whether exceptional circumstances exist that justify surrendering jurisdiction. *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92–93 (2d Cir. 2006). The case at bar relates to a final foreign judgment. Doc. 32, Ex. L.

### a. *Full and Fair Hearing in Russia*

Mosha had a full and fair opportunity to present his position in the Khamovniki Court, which is a court of general jurisdiction and was authorized to adjudicate Mosha's claims. Doc. 30, 7; *see also* Doc. 28, Ex. 10-B (Article 22 of the CPC). While Mosha does not dispute the Khamovniki Court's jurisdiction, he alleges that the judgment was *ex parte* because he was seeking political asylum in the United States at the time and could not appear in person to present his case. Doc. 31, 12. However, Article 48 of the CPC states that individuals have the right to represent themselves or act through representatives. Doc. 28, Ex. 7-B at 3. Kamaldoniv, Mosha's counsel, was duly notified at the September 29, 2017 court appearance that the next court date was November 13, 2017. *Id.* The Russian Appellate Court took this into consideration when upholding the Khamovniki Court's decision to continue the case in Mosha's absence, especially as he did not provide the Khamovniki Court with a reason for not appearing nor sending a representative to appear on his behalf. *Id.* at 4. Mosha was also represented in the Russian Appellate Action, by Yu. V. Blokhin ("Blokhin"). *Id.* at 1.

Mosha then makes conclusory allegations that he lost his case because of bias within the Russian judicial system. Doc. 31, 7. The Second Circuit has been reluctant to find foreign courts "corrupt" or "biased." *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002). To establish that a foreign forum is inadequate, a party must show evidence of corruption "specifically targeted at a party" rather than make broad claims about the judicial system as a whole. *Zeevi Holdings Ltd. v. Republic of Bulgaria*, 2011 U.S. Dist. LEXIS 38565, at *24 (S.D.N.Y. April 5, 2011), *aff'd*, 494 F. App'x 110 (2d Cir. 2012) (citing *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 494 (2d Cir. 2002)). These concerns are even more forceful where the parties consented to jurisdiction in the allegedly inadequate forum in the first place. *Id.*

Mosha contends that Yandex, LLC routinely denies requests to de-index websites and usually prevails in court actions when its denial is challenged. Doc. 31, 7. He further argues that he did not prevail against Yandex, LLC because he was not part of the political or business elite in Russia. *Id.* Allegedly, only one plaintiff has won a case against Yandex, LLC and that person had political government connections. *Id.* However, Mosha has not proffered any factual evidence that either he or Yandex, LLC were targets of corruption. He consented to jurisdiction in the Khamovniki Court when he filed suit there. Accordingly, Mosha has not sufficiently pled that he did not have a full and fair hearing in Russia.

      b. *Foreign Judgment Does Not Offend Domestic Public Policy*

Next, Mosha argues that the Khamovniki Court decision offends New York's public policy and violates his constitutional rights. Doc. 31, 11. He argues that the Khamovniki Court improperly deemed the statements about him being a criminal and a felon as true, in light of Article 152 of the CPC's provision that the accused party carries a burden of proving that the

challenged statements are true. *Id.* at 8–9, 11. Mosha cites to a U.S. Supreme Court case holding that the presumption of innocence is an axiomatic principle in the American justice system. *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). However, when the Khamovniki Court said that it had no grounds for granting Mosha's claims because the challenged information contained features of criminal acts for which the statute of limitations had not yet expired, it was referring to Article 10.3 which does not allow requests to remove information of that nature. Doc. 32, Ex. L at 2. The Khamovniki Court was referencing the category of information at issue, not making a judgment as to whether Mosha was a criminal or not. Thus, Mosha has not demonstrated that the Khamovniki Court violated domestic public policy and international comity is applicable here.

    1. *Res Judicata* Effect

However, while international comity is applicable here, the issues litigated in the foreign judgment are not identical to those in the instant case and the Court cannot give the foreign judgment *res judicata* effect. Federal courts normally apply either domestic federal or state law, depending on the nature of the claim, to determine the preclusive effect of a foreign judgment. *See Alfadda v. Fenn*, 966 F. Supp. 1317, 1329–30 (S.D.N.Y. 1997). Courts have applied the principle of comity to preclude re-litigation of substantially the same issues which have already been determined by a foreign court based on the doctrine of collateral estoppel. *Id.* at 1325. The doctrine of *res judicata* broadly encompasses the notion that "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Mitchell v. Nat'l Broad. Co.,* 553 F.2d 265, 268 (2d Cir. 1977) (quoting *S. Pac. R. Co. v. United States,* 168 U.S. 1, 48 (1897)).

9

The doctrine of *res judicata* embraces two concepts: issue preclusion and claim preclusion. *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir. 1985). Issue preclusion, often referred to as collateral estoppel, is succinctly defined as "the preclusive effect of a judgment that prevents a party from litigating a second time an issue of fact or law that has once been decided." *Murphy*, 761 F.2d at 879. The Second Circuit has held that collateral estoppel requires two levels of inquiry: "(1) the court must determine if the issues are identical and the issues necessarily decided in the prior action are decisive in the present action; and, (2) the court must determine whether the party to be bound had a full and fair opportunity to contest the determination." *Alesayi*, 947 F. Supp. at 666 (citing *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993)).

Yandex, Inc. is a sister entity to Yandex, LLC and thus was a privy in the Khamovniki Court action. It is well-settled in this Circuit that literal privity is not required for *res judicata* to apply. *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Privity exists when the interests of a nonparty were adequately represented in the initial action. *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 382 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2d Cir. 2000). A nonparty's interests can be adequately represented when they had a sufficiently close relationship with a defendant in the prior action to support preclusion. *Id.; see also Melwani v. Jain*, 02 Civ. 1224, 2004 WL 1900356, at *2 (S.D.N.Y. Aug. 24, 2004) (applying *res judicata* even when two companies were separate entities, because they had overlapping shareholders, officers, and directors). Mosha claims that Yandex, Inc. sells advertisements for Yandex.ru and is involved in its operations. Doc. 31, 16. Yandex, Inc. does not dispute that it sells advertisements for the Yandex brand but denies having ownership or authority over Yandex.ru. Doc. 40, 22. Mosha asserts that Yandex, Inc. and Yandex, LLC are

run by the same group of individuals and provided the staff pages for Yandex.com and Yandex.ru as evidence. Doc. 31, 16; *see also* Doc. 33, Ex. T. Yandex, Inc. does not dispute overlapping management, and so accordingly, Yandex, LLC adequately represented Yandex, Inc.'s interests during the Khamovniki Court action.

However, the Court determines that the issues litigated in the foreign action are not identical to those being litigated in the instant action. In the Khamovniki Court action, Mosha argued that Yandex, LLC provided access to websites that contained defamatory information about Mosha and asked for injunctive relief to de-index those websites and damages. Doc. 33, Ex. S. The Khamovniki Court decided the case pursuant to Russia's "Right to be Forgotten" law, which gives the person making the request access to information that is distributed in violation of Russian law and is untrue, outdated, or that has lost significance to the person making the request due to subsequent events or actions of the person making the request. Doc. 32, Ex. L.

"Issues are not identical when the standards governing them are significantly different." *Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir. 1987), *cert. denied*, 483 U.S. 1021 (1987). In the present action, Mosha brings claims under New York common law of (1) libel, as Yandex, Inc. allegedly made the defamatory information searchable and refused to remove it, and (2) tortious interference with contractual relations, as the defamatory content allegedly damaged Mosha's contractual relationships with this business clients. Doc. 1, Ex. A ¶¶ 17–20. To establish a claim for libel under New York law, a plaintiff must allege: (1) a written defamatory statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) damages. *See*, *e.g.*, *Kalaimantano GMBH v. Motion in Time Inc.*, 939 F. Supp. 2d 392, 419 (S.D.N.Y. 2013). Tortious interference with contractual relationships

11

is comprised of four elements: (1) existence of a valid contract enforceable by the plaintiff, (2) defendant's knowledge of the contract, (3) the intentional procurement by the defendant of the breach of contract without justification, and (4) resultant damages therefrom. *See*, *e.g.*, *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). Since the standards governing Mosha's claims in the previous and present actions differ significantly, the Khamovniki Court decision did not decide the same issues presented in this case.

Accordingly, the Court declines to grant *res judicata* effect to the foreign judgment.

### B. Failure to State a Claim

Even though international comity abstention does not apply to this action, Mosha has failed to plead the elements of libel and tortious interference with contractual relations as a matter of law pursuant to Fed. R. Civ. Pro. 12(b)(6). When ruling on a 12(b)(6) motion to dismiss, district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *In re Express Scripts Holding Co. Sees, Litig.*, No. 16 Civ. 3338 (ER), 2018 WL 2324065, *6 (S.D.N.Y. May 22, 2018) (quoting *Twombly*, 550 U.S. at 570).

1. Libel

Mosha fails to meet the five elements of libel, which to reiterate are: (1) a written defamatory statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) damages. *Kalaimantano*, 939 F. Supp. 2d 392 at 419. Mosha identifies one set of purported defamatory statements which alleged he was a cursed Jew, a scammer, and that it is in his blood to cheat and clean people out; and that all Jewish people should be killed or they "will plunder us all." Doc. 1, Ex. A ¶ 6. Statements that tend to injure another in his or her trade, business or profession can be considered defamation *per se*. *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y.2011); *see also Van-Go Transp. Co., Inc. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 98 (E.D.N.Y. 1997) ("Reputational injury to a person's business or to a company consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties.").

But courts have consistently held that the allegedly defamatory statement must affect the plaintiff's actual business profession, such as when it references a matter of significance and importance to the business operations, rather than a more general reflection upon the plaintiff's character or qualities. *Pure Power Boot Camp, Inc.*, 813 F. Supp. 2d at 550; *see also Kalimantano*, 939 F. Supp. 2d at 419–20 (finding statement was not defamation *per se* when it accused plaintiff of stealing watch during business transaction when plaintiff did not allege his business substantially involved watches or jewelry). Thus, the statement must impugn the plaintiff's ability to perform his or her specific occupation. *Van-Go*, 971 F. Supp. at 98–99.

Here, while the purported statement imputes fraud or misconduct to Mosha's character, it does not do so in relation to his important business operations, i.e., Mosha does not plead his

13

business significantly involves his Jewish heritage, or specifically says that he cheats his business customers. Doc. 1, Ex. A ¶ 6. Additionally, Mosha did not plead that Yandex, Inc. published the defamatory statements; he merely references seventeen website links which he claims to contain defamatory information. *Id.* Also, while Mosha makes the conclusory allegation that the statements are false, he does not plead facts to demonstrate their falsity. *Id.* Lastly, Mosha fails to allege special damages as required by law. It is well-settled that the plaintiff in a defamatory action must allege having incurred special damages as a result of the defamatory statement. Fed. R. Civ. P. 9(g); *Kalaimantano*, 939 F.Supp.2d 392 at 419–20; *cf. Van-Go*, 971 F. Supp. at 98 (holding when exception applies when statement impugns plaintiff's business reputation, which is libel *per se*, special damages need not be plead). Accordingly, Mosha has not met the standard for pleading libel.

2. Tortious Interference

Similarly, Mosha has failed to plead the four elements of tortious interference with contractual relations: (1) existence of a contract enforceable by the plaintiff, (2) defendant's knowledge of the existence of the contract, (3) the intentional procurement by the defendant of the breach of contract, and (4) resultant damages to the plaintiff. *Kirch Corp.*, 449 F.3d at 401. Mosha merely asserts that there is no dispute he had a business relationship with his customers and that he notified an unspecified Yandex entity about the damage the allegedly defamatory content was causing to his business reputation. Doc. 28, Ex. A at 17–20. Mosha does not identify any specific contracts that were breached, the parties to said contracts, or how such contracts were breached—all essential elements for sustaining a claim of tortious interference. *Kirch Corp.*, 449 F.3d at 401. Lastly, he makes no plausible allegations that Yandex, Inc.

intentionally procured Mosha's customers to breach their contract with him or that he suffered actual damages.

Accordingly, Mosha has failed to state a claim for libel and tortious interference pursuant to Fed. R. Civ. P. 12(b)(6) and so the case must be dismissed.

### C. Communications Decency Act § 230

Even if Mosha had sufficiently plead causes of action for libel and tortious interference as a matter of law, Yandex, Inc. has immunity under the CDA. "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA further immunizes such services from causes of action and liability imposed under any State or local law that is inconsistent with the CDA. *Id.* § 230(e)(3); *Manchanda v. Google*, No. 16-CV-3350 (JPO), 2016 WL 6806250, at *2 (S.D.N.Y. Nov. 16, 2016) (holding courts have interpreted CDA as granting broad immunity to Internet service providers for defamation and other related causes of action). The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service." 47 U.S.C. § 230(f)(2). Courts have widely held that as aggregators of third-party content, Internet search providers are interactive computer services, and as such, have immunity under the CDA. *Fed. Trade Comm'n v. LeadClick Media, LLC*, No. 15-1009-CV, 2016 WL 5338081, at *12 (2d Cir. Sept. 23, 2016) ("Courts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within this definition.").

This District has also held that an Internet service's noncompliance with a request to remove an allegedly defamatory posting has no bearing on its absolute immunity under the CDA.

15

*Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) (holding that deciding whether or not to remove content or when to remove content falls squarely within internet service provider's exercise of its publisher role and is therefore subject to CDA's broad immunity). The *Manchanda* Court dismissed the action in its entirety when the defendants were only acting as publishers of the allegedly defamatory websites, and so the CDA immunized them from such liability. 2016 WL 6806250, at *3. In the present matter, there is no dispute that Yandex, Inc. is an Internet service provider, and Mosha has not alleged that it created or posted the allegedly defamatory postings. Rather, Mosha seeks to hold Yandex, Inc. as a "responsible representative" for websites indexed on Yandex.ru, a search engine managed by Yandex, Inc.'s sister company, Yandex, LLC. Doc. 1, Ex. A ¶ 3. Accordingly, Yandex, Inc. has CDA immunity in this case.

However, Mosha argues that there is an exception to Yandex, Inc.'s CDA immunity because it contributed to violations of federal criminal statutes. Doc. 31, 14. The CDA does not immunize Internet service providers from their contribution to violations of federal criminal statutes committed by third parties: "Nothing in this section shall be construed to impair the enforcement of…any [] Federal criminal statute." 47 U.S.C. § 230(e)(1). However, Mosha concedes that enforcement of Federal criminal statutes only extends to criminal proceedings. Doc. 31, 14 (citing *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 326–27 (E.D.N.Y. 2018) (holding § 230(e)(1) is inapplicable to civil actions)); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 71 (2d Cir. 2019) (same) ("*Facebook II*").

Mosha erroneously claims that the instant case is distinguishable from *Facebook* because that case dealt with a civil and not a criminal statute. Doc. 31, 14; *see Facebook*, 304 F. Supp. 3d at 319 (applying CDA to claims brought under U.S. Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.*, a criminal statute). On the other hand, he argues, this case involves criminal statutes as

16

Yandex, Inc. allegedly contributed to the violation of several Federal criminal statues, such as stalking, 18 U.S.C. § 2261A, blackmail, 18 U.S.C. § 875, and mailing threatening communications, 18 U.S.C. § 877, among others. *Id.* at 14–15. However, this reasoning is inapposite as the § 230(e)(1) exception does not apply in civil actions, even assuming *arguendo* that civil litigants could "enforce" criminal statutes through a separate civil remedies provision. *See Facebook II*, 934 F.3d at 71–72. Accordingly, the criminal law exception does not apply here and Yandex, Inc. enjoys full CDA immunity.

### D. Remaining Claims

In the Complaint, Mosha appears to argue that Yandex, Inc. violated the terms of the Yandex, LLC User Agreement and the Yandex.com User Agreement,[2] which prohibit users from distributing illegal, harmful, slanderous, unethical, etc. content. Doc. 1, Ex. A ¶ 14. However, he has not provided factual support for these claims. He also failed to address them in the opposition to the motion, effectively abandoning them. *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) (holding when party fails to address claim in opposition to motion to dismiss, those claims are considered abandoned).

Having determined that Mosha's claims fail under several standards, this Court declines to address whether the action should be dismissed on the alternative grounds of *forum non conveniens* and failure to join Yandex, LLC as a required party.

---

[2] Mosha erroneously refers to them respectively as the "Terms of Yandex Service Use" and the "Yandex Terms of Service Users." Doc. 1, Ex. A ¶ 14; Doc. 28, 6–7.

## III. CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 26, and close the case.

It is SO ORDERED.

Dated: September 30, 2019
       New York, New York

                                                      Edgardo Ramos, U.S.D.J.